HENRY W. SHAW vs. NEW YORK AND NEW ENGLAND
RAILROAD COMPANY.

Hampden.   September 24, 1889. — November 27, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Railroad — Negligence — Defect in Construction.*

At the trial of an action against a railroad company to recover for personal injuries, there was evidence that a track of the defendant terminated at the end of a down grade at a street; that there was no bunter or other obstruction to prevent cars from running off the track into the street; that there was a telegraph pole opposite to and near the end of the track; and that cars standing on the track were driven therefrom against the pole by cars accidentally detached from a moving train, breaking the pole and causing the wires to fall upon the plaintiff's horses, which ran away, and he was injured. *Held,* that the jury might properly find that a bunter should have been placed to guard the end of the track, and that a verdict for the plaintiff was warranted by the evidence.

TORT. The declaration, which was in three counts, alleged, in substance, that the plaintiff was a hackman, and was employed in carrying a passenger to the station of the defendant at its terminus in Springfield; that while the passenger was in the act of alighting from his carriage to go to the station of the defendant and take her train, and while the plaintiff was in the exercise of due care, the defendant so carelessly and negligently managed its trains and engines that one of its cars was thrown or ran from the track, and against a telegraph pole, with such force as to loosen the wires and throw them upon the backs of his horses; and that by reason thereof, or of the unusual noise thereby made, they ran away, and dragged him some distance, whereby he sustained personal injuries. Trial in the Superior Court, before *Thompson,* J., who allowed a bill of exceptions, in substance as follows.

Evidence was introduced tending to prove the following facts. The defendant's railroad terminated in Springfield at Spring Street, upon which fronted its station. One of the tracks in the defendant's yard was used for the loading and unloading of freight cars and for the making up of trains, and its grade descended towards Spring Street, where it ended. No bunter or

other obstruction had been placed by the defendant at the end of this track to prevent cars from running off from it into the street, but opposite the end thereof and about six feet distant from it was a telegraph pole supporting various wires, and set apparently, according to a plan annexed to the bill of exceptions, within the limits of the street. This pole did not belong to the defendant. On April 21, 1887, the plaintiff carried a passenger, who was to take an afternoon train, in his hack to the station, and arrived there about twenty minutes before the departure of the train. He drove up to the platform in front of the station, alighted from his hack, and stood at the door in the act of collecting the passenger's fare. Just at this time a draw-bar pulled out of one of the cars of a moving train of the defendant, detaching several of them and causing them to run down this track into certain freight cars standing near the street, and driving them against the telegraph pole with sufficient force to break it, and to cause one or more of the wires to fall upon the horses, so frightening them that they ran away, and occasioned the injuries to the plaintiff. The draw-bar was held in position by an iron key passing through a slot in the bar, which key was broken off, thus allowing the draw-bar to be pulled out. This key, as well as the entire draw-bar apparatus, was of the kind in general use on freight cars by all railroads. The defendant employed a competent inspector, who inspected the draw-bar and key on the arrival of the car on that day, and did not find any imperfections therein. As the cars broke away, the defendant's servants tried in vain to stop them by means of the brakes thereon. The jury viewed the premises. There was no evidence that the pole was on the land of the defendant, nor of any negligent construction of the defendant's road, nor of any defective condition therein, unless the failure to provide a bunter or other obstruction at the end of the track was such a defect.

The defendant requested the judge to instruct the jury:

" 1. That, on all of the evidence of the case, the plaintiff could not recover.

" 2. That if, without the fault or negligence of the defendant, the draw-bar key broke, and the draw-bar pulled out, causing the train to break away, and the defendant, by its servants, made

due, reasonable, and proper exertions to control it after it had thus broken away, the plaintiff cannot recover.

" 3. That if, without the fault or neglect of the defendant, the draw-bar of the freight car pulled out, and by reason thereof the train escaped from the control of the defendant's servants, and, while thus beyond their control, ran into the telegraph pole, causing the wires thereon to be dislodged or broken, so that they fell upon the horses of the plaintiff, by reason of which said horses escaped from his control and he was injured, the plaintiff cannot recover.

" 4. That, if the train escaped from the control of the defendant's servants without fault or negligence on their part, the defendant is not liable, although had a bunter or other obstruction existed at the end of the track the pole would not have been hit and the wires thereon dislodged."

The judge refused to give the instructions as requested, but gave them with this modification, " unless there was a defect in the construction of the road that rendered it probable that the cars would go off of the end of the track," and instructed the jury that the defendant was under no legal obligation to put up a bunter; that it was for it to say whether it would have a bunter or not; but if it did not, it was held to such care as would be necessary to make the management of its cars reasonably safe without a bunter.

The jury found for the plaintiff; and the defendant alleged exceptions.

*C. L. Long*, for the defendant.

*J. B. Carroll*, for the plaintiff.

C. ALLEN, J.   The injury for which the plaintiff seeks to recover arose in this manner: the railroad track was laid upon a descending grade, which at its lower end stopped at a street. There was no bunter or other obstruction to prevent cars from going beyond the end of the track.   There was a telegraph pole near the end of the track, and, as we infer, in the street; and the injury to the plaintiff was caused by cars which accidentally, and apparently without the defendant's fault, had become detached from a train, running beyond the end of the track and striking against the telegraph pole, which was thereby broken, and one or more of the wires fell upon the plaintiff's horses and

frightened them. The want of a bunter or other obstruction at the lower end of the track was the defect relied on. We cannot say that this was not such a defect as to warrant a verdict for the plaintiff. The jury might properly find that a bunter should have been put up, in order to guard against just such accidents.

The defendant now objects that the want of a bunter was not a defect covered by the declaration. But the request for instructions and the ruling given did not rest upon the pleadings at all. If the request had rested on this ground, the plaintiff might have had leave to amend, if an amendment was necessary, which is doubtful. This objection is not now open to the defendant.                              *Exceptions overruled.*

